IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEBBIE COFFEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 16-cv-00508-JEB |
| | ) | |
| | ) | |
| BUREAU OF LAND MANAGEMENT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF DEBBIE COFFEY
## VICE PRESIDENT AND DIRECTOR OF WILD HORSE AFFAIRS FOR
## WILD HORSE FREEDOM FEDERATION

I, Debbie Coffey, do hereby declare, subject to the penalties of perjury, that the following statements are true and correct, to the best of knowledge and belief:

1.  I live in the City of West Hollywood, which is an incorporated city within Los Angeles County in the State of California.

2.  I am an individual and volunteer Vice President and Director of Wild Horse Affairs for Wild Horse Freedom Federation (WHFF).

3.  Wild Horse Freedom Federation is a Federally registered 501(c)(3) non-profit organization and I share the WHFF goals and particularly the goal to act decisively and swiftly when the welfare of the American Wild Horses and Burros are threatened and to educate the public on wild horse and burro issues.

4.  It would not be possible for me to pursue this case without lawyers, and their law clerks and legal assistants. I am represented in this case by attorneys Daniel Stotter, Peter Sorenson, and Lance Quaranto.

5.  I have personal knowledge as to all of the facts which are set forth herein, and am prepared to testify as to all matters which are set forth herein if called upon to do so.

6.  I have spent over four years providing volunteer service to protect wild horses and burros through the Wild Horse Freedom Federation. For almost three years, I, and other members of WHFF Board of Directors, have hosted a blog talk radio show called Wild Horse & Burro Radio, an educational outreach program of Wild Horse Freedom Federation. These radio shows are archived, so we have created an educational library for the public, which can be accessed on the Wild Horse Freedom Federation website. In the event I obtain the records requested, some of those records/documents will be placed on the WHFF website.

7.  I have filed over 100 Freedom of Information Act requests over approximately the past five years, to try to learn more about the specific operations of the BLM's Wild Horse & Burro Program. I have shared responsive documents not only with the Board of Directors of Wild Horse Freedom Federation, but with other organizations and individuals, who are trying to make sure there is accuracy and accountability in connection with issues regarding the BLM's Wild Horse & Burro Program. I have written articles with links to FOIA documents for the public to review. Wild Horse Freedom Federation has created a page on its website, http://wildhorsefreedomfederation.org/. That page is called DOCUMENTS where we give the public access to pertinent FOIA records that we receive from the BLM and other relevant Federal agencies. The public accesses these public records on our website.

8.  I have written articles regarding the BLM's Wild Horse & Burro Program that have been posted on many websites on the internet, have given radio interviews, and spoke at the American Equine Summit on the subject of Wild Horses & Burros in 2014. I have a B.A. in Radio and Television from California State University at Long Beach.

9.  I wrote a Freedom of Information Act request, April 29, 2015 and I emailed it to the Bureau of Land Management online portal at 3:39 am PST on April 29, 2015. My request is attached to this Declaration as Exhibit 101. The Declaration of Ryan Witt, FOIA Officer, BLM, U.S. Department of the Interior (hereafter Witt. Decl.) Exhibit A [Dkt 13-1] contains some of, but not all of, my request.  I initiated this request in hopes that the records released to me would assist in my educational, investigation and advocacy efforts. I am familiar with many of the activities of the BLM wild horse and burro Long Term Holding program.

10.  In my April 29, 2015 FOIA request, I requested:

a)  All segregable portions of all e-mails, faxes, letters, and notes from telephone calls FROM Lili Thomas (who was the Contracting Officer's Representative, COR, listed on the long term holding contracts as being in charge of the BLM Long Term holding facilities) TO the long term holding contractors and managers/key personnel, AND all segragable portions of all e-mails, faxes, and letters FROM the long term holding contractors and managers/key personnel TO Lili Thomas (excluding invoices, since I have requested those records in a previous FOIA request).  I request these records from the dates Jan. 1, 2007 up until the date Lili Thomas retired (about Jan. 2015).

b)  All segregable portions of all e-mails, faxes, letters and notes from telephone calls FROM Beatrice A. (Bea) Wade TO long term holding contractors and managers/key personnel, AND all segregable portions of of all emails, letters and faxes TO Beatrice A. (Bea) Wade FROM long term holding contractors and managers/key personnel. (Again, excluding invoices.)   I request these records from the dates of Jan. 1, 2007 up until the date the records are gathered to be sent to me.

c)  I also included in my FOIA request dated April 29, 2015 "To help you in your search,

the contracts for each individual long term holding contain the contractor's name, and

the Environmental Assessments for each long term holding facility lists the

managers/key personnel." However, this sentence was omitted in Mr. Witt's

Declaration (Witt. Decl. ¶ 5 and 6) [Dkt 13-1], in the Defendant's Memorandum of

Points and Authorities in Support of Defendants Motion for Summary Judgement

[Dkt 13] and in the Defendant's Statement of Material Facts Not in Dispute [Dkt 13-

2].

d) Additionally, I also provided in my April 29, 2015 request a list of the contractors as

well as the location of the holding facilities which are listed below.

1.  Bartlesville, OK (NMF94)
2.  Catoosa, OK (NMF95)
3.  Pawhuska, OK (NMF90)
4.  Foraker, OK (NMF91)
5.  Hulah, OK (NMF92)
6.  Grenola, KS (NMF93)
7.  Teterville West, KS (NMF97)
8.  Teterville East, KS (NMF98)
9.  Whitehorse, SD (MTF93)
10. Strohm, OK (NMF70)
11. Gray Horse East, OK (NMF72)
12. Gray Horse West, OK (NMF73)
13. Cassoday, OK (NMF96)
14. Hominy, OK (NMF74)
15. Mission Ridge, SD (MTF94)
16. Mt. Ayr, IA (ESF90)
17. Foster, OK (NMF71)
18. Tishomingo, OK (NMF75)
19. Mansfield Green, KS (NMF76)
20. Vinita, OK ( NMF77)
21. Nowata, OK (NMF78)
22. Hickory, OK (NMF79)
23. Ennis, Montana (Spanish Q)
24. Atkinson, NE

11. I requested the above records from Ms. Wade and Ms. Thomas because each are or

were involved with the Long Term Holding Facility Contractors. Ms. Thomas was employed with the BLM as a National Wild Horse and Burro specialist and was the Contracting Officer's Representative (COR) for Long Term Holding facilities. Ms. Thomas' responsibility was to monitor the long term holding contractors' performance. Ms. Thomas was a Contracting Officer's Representative according to page 338 (of 514), attached to this Declaration as Exhibit 105. Through other FOIA requests I have made, as well as Exhibit 105, I have been able to determine that Ms. Thomas was a BLM contact for the Contractors.   There is evidence in the records provided to me of contact between Ms. Thomas and at least one of the contractors as seen on page 410 of the 514 pages released to me on April 6, 2016. This email is attached to this declaration as Exhibit 102. The partial email or letter found in Exhibit 102 was addressed directly to Ms. Thomas by T.W. Burton of the Burton Ranch and the content of the email had to do with drought conditions at the Burton Ranch, which is specifically the type of guidance that the Contractors are told to contact the COR about. This indicates to me that some emails were being sent to Ms. Thomas and that there are likely more emails to be found with a more adequate search of BLM records. These few pages are the only records provided to me that are responsive to my request (Exhibit 102).

12. Mr. Witt did not describe any search for or of the long term holding contracts or Environmental Assessments, nor did he describe the use of even one name of a contractor or long term holding facility manager or key personnel in the search terms that were used to search for responsive records, so I believe the search was inadequate (Witt. Decl. ¶ 12) [Dkt 13-1]. If Mr. Witt, or the appropriate BLM staff, should have searched for and looked at the long term holding contracts or emails sent by the BLM to the Long Term Holding Contractors, they would have found the contractor's name and the lists of the names of key personnel for each long term

holding facility.

13. There is a significant public interest in the full and complete disclosure of all of the responsive records related to the release of the request at issue in this action.

14. As part of my April 29, 2015 FOIA request, I asked the agency for a fee waiver. The request for a search fee waiver was rejected May 26, 2016. Witt Decl. Exhibit B [Dkt 13-1].

15. On June 1, 2015 I wrote a personal check and mailed that check, in the amount of $1,680.00, in response to a request by the BLM.

16. On June 19, 2015, the BLM National Operations Center deposited my check in the sum of $1,680.00.

17. On October 22, 2015, I emailed Ms. Schumacher asking for an estimated date for completion of my April 29, 2015 FOIA request 2015-00586.

18. On October 22, 2015, Ms. Schumacher responded to my email and stated that the records are "in the queue for review" and did not provide an estimated response date.

19. On November 6, 2015 I had still not received a response from Ms. Schumacher so I emailed Ms. Schumacher asking for an estimated date the agency would complete action on FOIA request 2015-00586.

20. On November 9, 2015 Ms. Schumacher sent an email to me, again stating that the records are "in the queue for review" and again giving me no estimated date for completion.

21. On November 10, 2015, approximately 108 working days later, I requested a return of the $1,680.00 that I had paid to the agency on June 1, 2015.

22. On December 31, 2015 I emailed both BLM WO FOIA and Mr. Witt stating that I had not received the records requested nor had I received a refund of funds provided to the agency on June 1, 2015. As of 9am on Monday, December 5, 2016, no money with interest has

been refunded to me, even though the BLM missed their 20 working day deadline to provide me with responsive records.

23. On March 17, 2016 my attorneys filed, on my behalf, the complaint in this action.

24. On April 6, 2016, BLM for the first time partially responded to my April 29, 2015 FOIA request via email. My estimate is that a total of 343 calendar days and 233 working days elapsed between Defendant's receipt of my request on April 29, 2015 and Defendant's release of some non-exempt responsive records on April 6, 2016.

25. On page 102 and 103, shown on Exhibit 103, of the released records, there is a portion of a contract between the BLM and a Long Term Holding Facility which outlines the Contractors duties of care for the animals stored at the facility. Specifically, the Contractor is directed to contact the Contracting Officer's Representative (COR) for guidance in handling different circumstances pertinent to Wild Horses and Burros. As noted previously, Ms. Thomas is a COR and thus was a contact for the Contractors per the guidelines laid out in the actual BLM contract.

26. Within Mr. Witt's declaration, Ms. Wade indicates that emails are not commonly used to communicate with the Long Term Contractor's (Witt Decl.¶ 14) [Dkt 13-1]. However, on page 368 of the records response is a December 19, 2013 email sent by Danny Lavergne, who is a Contracting Officer for BLM, to Long Term and Short Term Holdings Contractors. This email is attached to my Declaration as Exhibit 104. Along with numerous contractors, Exhibit 104 shows email addresses for 27 Long and Short Term Holding Contractors. Ms. Thomas was copied on this email as well, which in my mind further indicates her involvement with the contractors and the need for her to stay in contact with them. The BLM did not search for emails from these email addresses, or to these email addresses from Ms. Thomas or Ms. Wade. In my

mind this calls into question Ms. Wade's assertion that emails are not used by the defendant in communicating with the Long Term Holding Contractors and thus further calling into question the adequacy of the search as none of the email addresses listed on page 368 (Exhibit 104) were searched.

27. In Mr. Witt's Declaration (Witt Decl.¶ 4)  he states that "Attached as Exhibit A is a true and complete copy of this request."  However, Exhibit A is not complete.  On Exhibit A, the last sentence at the bottom of page 13 of 41 contains "The current LONG TERM HOLDING FACILITIES are:" but then at the top of page 14 of 41, it starts out mid-sentence with "for these operations and activities." Exhibit A is missing the following from my FOIA request:

        Bartlesville, OK (NMF94)
        Catoosa, OK (NMF95)
        Pawhuska, OK (NMF90)
        Foraker, OK (NMF91)
        Hulah, OK (NMF92)
        Grenola, KS (NMF93)
        Teterville West, KS (NMF97)
        Teterville East, KS (NMF98)
        Whitehorse, SD (MTF93)
        Strohm, OK (NMF70)
        Gray Horse East, OK (NMF72)
        Gray Horse West, OK (NMF73)
        Cassoday, OK (NMF96)
        Hominy, OK (NMF74)
        Mission Ridge, SD (MTF94)
        Mt. Ayr, IA (ESF90)
        Foster, OK (NMF71)
        Tishomingo, OK (NMF75)
        Mansfield Green, KS (NMF76)
        Vinita, OK ( NMF77)
        Nowata, OK (NMF78)
        Hickory, OK (NMF79)
        Ennis, Montana (Spanish Q)
        Atkinson, NE

To the best of my knowledge, Mr. Witt left off other portions of my April 29, 2015 request in his

Exhibit A. The following language was left out:

I request that this information be sent to me on CDs. Since information from many sources is requested, I request that the information be sent to me incrementally as it is received or in small groups, rather than having to wait a long time for every last piece of paper to arrive on all of the holding facilities.

I request a fee waiver.

The questions (in red) listed below are on the Department of Interior's website as criteria for qualifying for a fee waiver, and I have answered the questions.

My fee waiver request:

1. Is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and
2. The subject of the request must concern identifiable operations or activities of the Federal government, with a connection that direct and clear, not remote or attenuated.
3. This disclosable portions of the requested records must be meaningfully informative about government operations or activities to be "likely to contribute" to an increased public understanding.

The records I request are not in the public domain, but will be meaningfully informative to the public with respect to the Bureau's operations and activities in connection with its Wild Horse & Burro Program, because the requested records are ABOUT the detailed operations and activities of the long term holding facilities and the care of the wild horses and burros, and are both very important aspects of the BLM's Wild Horse & Burro Program. The specific, detailed information I am requesting regarding the long term holding facilities is not available online. The connection is clear and direct. Te public has many questions regarding both the long term holding facilities and the care of the wild horses and burros, which are managed by the BLM's Wild Horse & Burro Program.

In the 2015 annual budget justification for BLM's Wild Horse & Burro program, about $45 million dollars (of over $80 million dollars for this program) goes to the cost of the holding facilities. The American taxpayer pays

28. Mr. Witt, in describing the search terms, used search terms "long term holding

contract," "contractor," "contractors," "contract," "Contracting Officer's Representative,"

"COR" and the names of the long term holding facility locations, but not the names of any

contractors, managers or key personnel, nor any of the email addresses of the Long and Short

Term Holding Contractors. (Witt Decl.¶ 12) [Dkt 13-1].

29. I have reviewed many Long Term Holding Contracts. I have also reviewed many Environmental Assessments concerning the conditions on the ranches where wild horses and burros are resident, pursuant to Long Term Holding Contracts. Here are some of the names of the ranch, the owner, and key personnel:

From Shadow 7 LLC:
Bob Buford, ranch owner
Sterling Varner, ranch owner
Tim Rogers, Don Schmidt, Craig Miller, Ranch Foreman
Russell Briggs, office manager

From Trentman Ranch:
Kent Trentman, owner
Sally Trentman, owner

From Spur Livestock:
Jim Reeves, partner
Lyle Anderson, partner

Vestring:
Steve Vestring, partner
Louis Vestring, partner
Robert (Bob) Vestring

Doyle Richards, co-owner
Connie Richards, co-owner

Burton Ranch
Thomas W. (TW) Burton, operator
Thomas E. Burton, operational support
Rachelle Burton, bookkeeping

Terry Riddle, owner
Sharon Riddle, office administrator

John Row, ranch owner
Mike Row, Wild Horse Foreman, Office Administration
Doris Row

Garry Steinhoff, co-owner
Debbie Steinhoff, co-owner

Hughes Cattle co.

Robert S. Hughes
John Hughes
Robert Hughes II

Strohm
F. Ford Drummond
Ford Drummond, manager
Frederick Drummond, consultant

Foraker
Melvin Reed, operations manager
Ron Reed, business manager
Jason Reed, Area 1 supervisor
Taylor Reed, Area 2 supervisor
Elizabeth Reed, Records clerk

Drummond Land and Cattle
Tim Drummond, general manager
Ladd Drummond, general manager

Tadpole
John F. Hughes, owner
Dan Gallery, owner
Robert S. Hughes II, ranch foreman
Mary Scott, office manager

Cross Bell
Dan Wells, project manager
Kathleen Meagan Fogarty, co-owner
Katsy Mullendore Whittenberg, co-owner
Lori Wells, office administrator

Grand Eagle Summit
Walter Wakefield, ranch mgr.
Jaylean Wakefield, ranch mgr.
Troy Phillips, bookkeeping and office management

Spanish Q
Karen D. Rice, corporate secretary
Greg Rice, Pres.
Collin Rice, V.P.

20 West LLC
Sam Buford
Carroll Ray, Ranch Foreman
Kandy Ayres, office manager

2 Mounds Ranch
Harold Trentman
Lewis Trentmen, owner
Becky Trentman, owner

Mr. Witt's Declaration stated that the BLM searched only for locations, not other information

such as name of contractor, name of ranch, or contact at ranch.

30. I have attached the following Exhibits and they are incorporated in my Declaration:

Exhibit 101 – Complete FOIA Request, April 29, 2015

Exhibit 102 – Page 410 of Records Released April 6, 2016

Exhibit 103 – Pages 102 – 103 of Records Released April 6, 2016

Exhibit 104 – Page 368 of Records Released April 6, 2016

Exhibit 105 – Page 338 of Records Released April 6, 2016

31. I have reviewed the Declaration of Ryan Witt, filed in this action [Dkt 13-2] and it is

my opinion that not all requested records were provided to me, because of limited search terms.


I declare under penalty of perjury that the foregoing is true and correct.


Executed December 5, 2016, in Palm Springs, California.


/s/ Debbie Coffey
Debbie Coffey

# Exhibit 101

Complete FOIA Request, April 29, 2015



**Deb Coffey <debbiecoffey1234@gmail.com>**

---

## Freedom of Information Act Request (4/29/15)

**Deb Coffey <debbiecoffey1234@gmail.com>**                                  Wed, Apr 29, 2015 at 3:39 AM
To: "FOIA, BLM_WO" <BLM_WO_FOIA@blm.gov>, blm_oc_foia@blm.gov, Deb Coffey
<debbiecoffey1234@gmail.com>

April 29, 2015

**Washington, DC Office**
WO FOIA Coordinators
1849 C Street NW, Rm 2134LM
Washington, DC
Phone: 202-912-7650
Fax: 202-245-0027
Email:BLM_WO_FOIA@blm.gov


                                                                **RE: Freedom of**

**Information Act Request**

Dear Washington Office FOIA Coordinator:

This is a request under the Freedom of Information Act. I request a copy of the following documents, or documents containing the following information, which are in connection with the **BLM's Wild Horse & Burro Program**, to be provided to me

**1) All segregable portions of all e-mails, faxes, letters, and notes from telephone calls FROM Lili Thomas (who was the Contracting Officer's Representative, COR, listed on the long term holding contracts as being in charge of the BLM Long Term holding facilities) TO the long term holding contractors and managers/key personnel, AND all segregable portions of all e-mails, faxes, and letters FROM the long term holding contractors and managers/key personnel TO Lili Thomas (excluding invoices, since I have requested those records in a previous FOIA request). I request these records from the dates Jan. 1, 2007 up until the date Lili Thomas retired (about Jan. 2015).**

**2) All segregable portions of all e-mails, faxes, letters and notes from telephone calls FROM Beatrice A. (Bea) Wade TO long term holding contractors and managers/key personnel, AND all segregable portions of all emails, letters and faxes TO Beatrice A. (Bea) Wade FROM long term holding contractors and managers/key personnel. (Again, excluding invoices.) I request these records from the dates of Jan. 1, 2007 up until the date the records are gathered to be sent to me.**

**To help you in your search, the contracts for each individual long term holding contain the contractor's name, and the Environmental Assessments for each long term holding facility lists the managers/key personnel. Lili Thomas worked out of the BLM Reno, Nevada office, and Beatrice Wade works out of the BLM Reno, Nevada office. Bea Wade's current email address is bwade@blm.gov, but she may have had other email addresses during the time period of the requested records. Her phone number is (775) 861-6625. From information obtained through other FOIA requests, Bea Wade, who is a Wild Horse & Burro Specialist, has been involved in the operations and activities of the long term holding facilities. (The documents requested are between a government employee and private contractors, so these documents**

are not interagency or intraagency.)

The current LONG TERM HOLDING FACILITIES are:

**Bartlesville, OK (NMF94)**
**Catoosa, OK (NMF95)**
**Pawhuska, OK (NMF90)**
**Foraker, OK (NMF91)**
**Hulah, OK (NMF92)**
**Grenola, KS (NMF93)**
**Teterville West, KS (NMF97)**
**Teterville East, KS (NMF98)**
**Whitehorse, SD (MTF93)**
**Strohm, OK (NMF70)**
**Gray Horse East, OK (NMF72)**
**Gray Horse West, OK (NMF73)**
**Cassoday, OK (NMF96)**
**Hominy, OK (NMF74)**
**Mission Ridge, SD (MTF94)**
**Mt. Ayr, IA (ESF90)**
**Foster, OK (NMF71)**
**Tishomingo, OK (NMF75)**
**Mansfield Green, KS (NMF76)**
**Vinita, OK ( NMF77)**
**Nowata, OK (NMF78)**
**Hickory, OK (NMF79)**
**Ennis, Montana (Spanish Q)**
**Atkinson, NE**

I request that this information be sent to me on CDs. Since information from many sources is requested, I request that the information be sent incrementally as it is received or in small groups, rather than having to wait a long time for every last piece of paper to arrive on all of the holding facilities.

**I request a fee waiver.**

The questions (in red) listed below are on the Department of Interior's FOIA website as criteria for qualifying for a fee waiver, and I have answered the questions.

My fee waiver request:

1. **Is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and**
2. **The subject of the request must concern identifiable operations or activities of the Federal government, with a connection that is direct and clear, not remote or attenuated.**
3. **The disclosable portions of the requested records must be meaningfully informative about government operations or activities to be "likely to contribute" to an increased public understanding of those operations or activities. Information that already is in the public domain, in either the same or a substantially identical form, would not contribute to such understanding.**

The records I request are not in the public domain, but will be meaningfully informative to the public with respect to the Bureau's operations and activities in connection with its Wild Horses & Burro Program, because the requested

records are ABOUT the detailed operations and activities of long term holding facilities and the care of the wild horses and burros, and both are very important aspects of the BLM's Wild Horse & Burro Program. The specific, detailed information I am requesting regarding the long term holding facilities is not available online. The connection is clear and direct. The public has many questions regarding both the long term holding facilities and the care of the wild horses and burros, which are managed by the BLM's Wild Horse & Burro Program.

In the 2015 annual budget justification for BLM's Wild Horse & Burro program, about $45 million dollars (of over $80 million dollars for this program) goes to the cost of the holding facilities. The American taxpayer pays for these operations and activities. I am requesting documents that detail these operations and activities. More wild horses are now in these BLM holding facilities than are on the range in their Herd Management Areas. In the Nov. 2014 BLM Off the Range facility report, there were over 31,000 wild horses in the long term holding facilities alone.

The BLM has had "tours" of some of the long term facilities, where they rent buses and invite the media, so the BLM seems to realize there is public interest. However, it has been about 2 1/2 years since the BLM has had a tour of any long term holding facilities, so this leaves the public with very little information. There is very little transparency in this aspect of the Wild Horse & Burro Program, and extremely limited public access to these holding facilities.

http://www.blm.gov/wo/st/en/info/newsroom/2011/april/NR_04_29_2011.html

And the BLM, again, using taxpayer dollars, rents buses to drive the public around in, but other than those annual dates or specific locations, the public cannot go on a tour or see the wild horses in long term holding facilities. The public has never had an opportunity to see most of the long term holding facilities, since the BLM has not offered tours of most of them. It is often far and expensive for many members of thepublic to travel to Kansas or Oklahoma for a tour. The last tour was about 2 1/2 years ago. http://www.blm.gov/wo/st/en/info/newsroom/2012/march/NR_03_30_2012.html

The records I am requesting will contribute to public understanding of the activities and operations of the BLM Wild Horse & Burro Program,**and the public needs the requested information to understand more about the long term holding aspect of BLM's Wild Horse & Burro program. The BLM Wild Horse & Burro Program website does NOT give the public a detailed overview of the information I am requesting, which I intend to make available to a large segment of the public.**

The requested records would cover the care of wild horses & burros in long term holding facilities in more detail. The records would also detail the activities of the long term holding contractors. The records I am requesting would also contribute to the BLM's stated commitment to transparency and allow the public to have additional accountability, which it can only have with access to detailed information.

The public is interested in, and cares about, our wild horses & burros. There were major media news stories regarding Tom Davis purchasing over 1700 wild horses from the BLM, and the shipping of the horses, which may have gone to slaughter. Below are a few of the links in well known media regarding wild horses being sold by the BLM, shipped and questions regarding the disposition of the wild horses. As you can see, there was much media and public attention to the issue of wild horses.

http://www.democracynow.org/2012/10/9/all_the_missing_horses_federal_govt

http://usnews.nbcnews.com/wild-horses

http://www.boiseweekly.com/boise/all-the-missing-horses-what-happened-to-the-wild-horses-tom-davis-bought-from-the-government/Content?oid=2738262

http://openchannel.nbcnews.com/_news/2012/09/29/14153296-wild-horses-sold-by-us-later-ending-up-at-slaughterhouses?lite

http://www.lasvegassun.com/news/2012/oct/02/all-missing-horses-what-happened-wild-horses-tom-d/

http://www.propublica.org/article/missing-what-happened-to-wild-horses-tom-davis-bought-from-the-govt

http://abcnews.go.com/US/wireStory/blm-restricts-sales-wild-horses-18135379#.UOwzzaxrR1E

http://www.washingtonpost.com/business/blm-issues-new-rules-restricting-sales-of-wild-horses/2013/01/04

/b524329a-56bf-11e2-89de-76c1c54b1418_story.html

http://www.boston.com/business/news/2013/01/04/new-blm-rules-restrict-sales-wild-horses/DsrHDvb8aYjtkDyszJycWI/story.html

http://www.sfgate.com/news/science/article/New-BLM-rules-restrict-sales-of-wild-horses-4168350.php

**The public's understanding of the subject must be enhanced to a significant extent by the disclosure.**

The information I am requesting is **new** information**.** All of the records I have requested are not on the BLM's Wild Horse & Burro Program website, and there is currently **no Information available publicly** about these records. The requested information will greatly contribute to the public's understanding of the operations of the long term holding aspect of the Wild Horse & Burro Program, and of the specific activities of the long term holding contractors and the care (and possible disposition) of the wild horses and burros.   For example, documents I received in a prior FOIA request revealed that a contractor weaned foals too soon, which the BLM had advised him against doing.  The records I am requesting could highlight issues and concerns that the BLM or contractor may have during these activities and operations that are not otherwise revealed to the public.   American taxpayers have paid hundreds of millions of dollars over many years for the BLM's Wild Horse & Burro Program, and deserve to know all aspects of how their money is being spent, which includes the activities and operations of BLM long term holding facilities and the care of the wild horses & burros.  The documents I am seeking are directly related to the care and disposition of the wild horses & burros, which are significant activities and operations of the BLM Wild Horse & Burro Program.

The public needs access to government documents to gain understanding and to make sure there is accountability.  There is very little about the long term holding facilities on the BLM website.

The BLM has claimed to "improve transparency and responsiveness in the program,"especially in the 2015 budget justification, which would seem to include making requested records available to the public.  Granting fee waiver requests, when reasonable, facilitates transparency.  The public needs access to information to have a broad, overall view of this BLM program, and to be able to review and analyze issues and to comment on them.  The American people cannot participate in their own government if they don't have access to documents of government activities and operations.

**The disclosure must contribute to the understanding of a reasonably broad audience of persons interested in the subject, as** opposed to your individual understanding. The bureau will consider your expertise in the subject area as well as your ability and intention to effectively convey information to the public.

As for my "identity, vocation, qualifications and expertise": I am a tax paying citizen of the United States of America, and I host an internet blogtalk radio show called Wild Horse & Burro Radio, which is an educational outreach program of the 501(c)3 non-profit Wild Horse Freedom Federation.   I am also a volunteer V.P. and Director of Wild Horse Affairs for Wild Horse Freedom Federation.

I have read and commented on many of the BLM Environmental Assessments (EAs) for proposed wild horse "gathers" in the Western United States (some of which have been printed as articles). I have traveled in three (3) states (California, Oregon & Nevada) and have observed many wild horse gathers. I have been to short term holding facilities at Fallon, Nevada (Indian Lakes Road), Palomino Valley in Sparks, NV, and Litchfield in northern CA.  I research aspects of the Wild Horse and Burro Program, from the time the decision is made to "gather" (roundup) wild horses, to issues in connection with the "gather" itself (which I have observed), temporary holding on the range (which I have observed), transportation to short term holding facilities (which I have observed), methods of contraception, long term holding facilities and the ultimate final disposition of the wild horses.

I have reviewed laws/policies applicable to the BLM's operations, including FLPMA, 43 CFR, and the BLM Land Use Planning Manual.  I have reviewed BLM Resource Management Plans, DEISs, and BLM Instruction Memorandums (about half of which aren't available to the public on the BLM's website, by the way).  I also review NEPA projects at many BLM Field Offices that are proposing wild horse roundups, to see what other "multiple uses" are competing for water and land in that area.  I review minutes from the Wild Horse & Burro Advisory Board meetings and minutes from many local Resource Advisory Council meetings. I review the DOI proposed FY budget for money requested for the Wild Horse & Burro Program.

Freedom of Information Act Request (4/29/15)                    https://mail.google.com/mail/u/0/?ui=2&ik=d5ffe70f8a&view=pt&sea...

I have an overall understanding of most aspects of the Wild Horse and Burro Program. I have written about other BLM projects including mining and oil and gas leases.

I write articles and have been a guest on radio shows, some which are broadcast nationally, where I talk about the Wild Horse and Burro Program and BLM operations, procedures and policies. (details listed below)

The requested information is not primarily to enhance only my own knowledge, because I plan to distribute the information to a large segment of the public at large to help contribute to their understanding of BLM's plans via articles on the internet and nationally broadcast radio shows (details listed below).

The records include new information on an aspect of the BLM's Wild Horse and Burro Program, which costs taxpayers about $75.7 million per year. The information is not currently publicly available.

The BLM's management of public lands, and the management of wild horses and burros, is of interest to a great many people, including other stakeholders.

I have the intent to disseminate the information to a large segment of the public at large throughout the United States with articles on the internet and on radio interviews broadcast across the USA. I am able to reach large segments of the public, especially on the radio.

One of the nationally syndicated radio shows where I was a guest being interviewed was broadcast in Alabama, California (including Los Angeles), Idaho, Kansas, Louisiana, Michigan, Missouri, Montana, Nevada, New Mexico, New York, Ohio, South Dakota, Tennessee, Texas, Washington and Wisconsin, also via satellite and internationally. Another radio show was broadcast in New York City, Philadelphia and on the internet.

I've been interviewed (I do this as a concerned American citizen and do not receive any money) on the following radio shows involving subject matter involving the Bureau of Land Management, the BLM's Wild Horse and Burro Program and public lands issues:

KGO News Radio (San Francisco)

Gary Null Show (Progressive Radio Network)  http://thegarynullshow.podbean.com/2011/07/28/the-gary-null-show/

The Power Hour with Joyce Reilly (Genesis Communications Network) http://www.thepowerhour.com/past_shows/schedule_11_14_2011.htm

The Unsolicited Opinion with Maggie Roddin (Republic Broadcasting)

http://theunsolicitedopinion.com/2012/04/11/wednesday-april-11th-debbie-coffey-wild-horses-cant-drag-us-away/

Truth Quest with Melodie Hallett (Oracle Broadcasting)  http://www.oraclebroadcasting.com/archives.php?who=truthquest&month=5&year=2012

www.theinformationcorner.com with Sam & Trish Britton (Missouri)  http://www.theinformationcorner.com/2012broadcastarchive.shtml

The Common Sense Show with Dave Hodges (Republic Broadcasting) and

The Truth Squad with Marti Oakley (blogtalkradio)

The stats on my articles on just one website are 9,000-10,000 readers per article. My articles are picked up all over the internet after that. On another website, Liberty News Online, that posts my articles, the authors include ex-Presidential candidate Ron Paul, and well known political commentators like Patrick Buchanan, Ann Coulter and Michelle Malkin, as well as articles by the Washington Times and the New York Post. (I don't necessarily share any or all of their political viewpoints.)

My articles, which I write for free, are to inform and educate the public and have been posted online at (I've also provided some links to my articles on these websites below):

www.counterpunch.org

www.opednews.com

*www.libertynewsonline.com
http://www.libertynewsonline.com/article_301_30288.php

*www.progressiveradionetwork.com

*www.republicbroadcasting.org

**The Desert Independent (serving Blythe, CA and desert regions of the Southwest)**

*www.lagunajournal.com   http://www.lagunajournal.com/senator_harry_reid_is_working_ha.htm

**www.yubanet.com (news to Sacramento, CA and the Sierra)**

http://yubanet.com/opinions/Debbie-Coffey-Open-letter-to-BLM-on-wild-horse-roundups-
and-fracking.php#.UOxPOaxrR1E

**The PPJ Gazette**  http://ppjg.me/2012/06/28/blm-arsenic-mercury/

**www.garynull.com**

**Straight From the Horse's Heart (website)**  http://rtfitchauthor.com/2011/08/22/you-can-now-see-our-wild-horses-
in-long-term-holding/

www.farmwars.info   http://farmwars.info/?p=3166

*www.thecloudfoundation.org   http://thecloudfoundation.wordpress.com/2010/06

In addition, my articles are often picked up and posted on other internet websites and blogs, as well as mentioned in
news comment sections (for example, in the Elko Daily Free Press in Nevada), and have been mentioned and
linked to in press releases in Horseback magazine andHorsetalk in New Zealand.

I intend to use the information to contribute to public understanding by distributing information about
the processes of long term holding andthe disposition of the wild horses and burros in the BLM's Wild Horse &
Burro Program.

## I have both the ability and the intent to disseminate the requested information to the public.

*Explain how release of requested records will contribute significantly to public understanding. For
example, is the information being disclosed new, does the information confirm or clarify data released
previously, and is the information publicly available? Explain how disclosure will increase the level of
public understanding that existed prior to disclosure.*

The information I am requesting is **new** information.  There is currently **no information available to the public** with
specific information accounting for long term holding facilities or the care of the wild horses in these long term
holding facilities, which are part of the operations and activities of the BLM Wild Horse & Burro Program.  The
requested information will contribute to the public's understanding so they can have an accurate accounting and
detailed information of how horses are cared for in each long term holding facility (their health and care while
there), as well as other issues regarding the operations and activities.  Since there is currently no information
available to the public regarding this, the requested information would contribute significantly to public
understanding of this aspect of the BLM's Wild Horse & Burro Program.

The public needs access to government documents to gain understanding and to make sure there is
accountability.  The BLM has claimed to *improve transparency and responsiveness in the program,* and that would
include releasing requested information to the public.

**Is not primarily in your commercial interest.**

I do NOT have any commercial interest that would be furthered by disclosure of this information. I do not get paid for this. I do this as a concerned citizen.

If, for any reason, I do not qualify for a fee waiver, I expect a detailed letter from the Solicitor's office, commenting on each of the questions I have answered, informing me of their reasoning if they consider this information could not be meaningfully informative with respect to the Bureau's operations and activities, how it could not contribute to the understanding of the public at large, or how it might not contribute significantly to public understanding.

I may be called at the telephone number listed below between the hours of 9 a.m. and 6.p.m. to discuss my request, if necessary.

I will expect a response within 20 working days as provided by law. If my request is denied in whole or in part, I expect a detailed justification for withholding records. I request any segregable portions that are not exempt to be disclosed.

Thank you for your time.

Sincerely,

Debbie Coffey
912 N. Sweetzer Ave., Apt. D
West Hollywood, CA 90069
(323) 650-5504
debbiecoffey1234@gmail.com

# Exhibit 102

Page 410 of Records Released April 6, 2016

TW Burton Ranch has been in a drought for the past 3 years and has been feeding hay for longer periods of time at higher prices than was originally estimated when he submitted his proposal.  His option year will be up at the end of September 2013 and TW Burton would like for us to pick up the 545 horses that are being maintained on his ranch.  The following is an e-mail that he sent before the site visit on July 23, 2013.

**Rachelle Burton**                                Jul 15 (12 days ago)

to me, Pat, dlavergne

Dear Ms. Thomas,

We are writing to update you on the drought situation.  The main growing season has reached an end with less than an inch of rain fall for the month of June.  We are depleted of forage with what little forage there is showing signs of stress.

Due to 3 years of extreme weather we are writing to notify you that other arrangements need to be made for the horses.  In order for the horses to maintain their current condition they would need to be removed by September 1.

We would like to keep the horses and are willing to work with you, but we cannot continue the long term contract under these drought conditions.  You probably have faced these situations with other Long Term Contract holders.  If you have recommendations or a plan B, we are more than open to discuss anything.

If you would like to discuss other arrangements, I am available anytime at 620-340-3369.  Should you consider leaving the horses here, we would like for you to be aware that hay is scarce and would need to be secured ASAP.

Sincerely,

TW Burton


The site visit showed that on the east side the grass was short, sparse and a lot of weeds with thin horses. The west side was in better shape but would not be if they do not get more moisture and even then the residual grass for the winter will be short. I talked with TW and told him that we could not give him any more money since it is a fixed priced contract.  He said that he could not continue and that he would like us to remove the horses as he was going broke.  I gave him the option of keeping some horses and having us remove some, but he did not think that would work.  Because the option year cannot be extended the 545 horses will need to be removed before Oct 1, 2013.

# Exhibit 103

Pages 102–103 of Records Released April 6, 2016

# AWARD/CONTRACT

| | | | Rating | Page | of | Pages |
|---|---|---|---|---|---|---|
| 1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) | | | N/A | 1 | | 3 |

| 2. CONTRACT (Proc. Inst. Ident.) NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQUEST PROJECT NO. |
|---|---|---|
| NAC000131 | 10/03/2000 | R-0001083 |

| 5. ISSUED BY | CODE | BC660 | 6. ADMINISTERED BY (If other than Item 5) | CODE |
|---|---|---|---|---|

BLM NATIONAL BUSINESS CENTER
BC660, BLDG 50, DFC, PO BOX 25047

DENVER, CO 80225-0047

| 7. NAME AND ADDRESS OF CONTRACTOR    (No., street, city, county, State and ZIP Code) | 8. DELIVERY    [ ] FOB Origin    [✓] Other (See below) |
|---|---|

Carlton H. Noyes
P.O. Box 1388
Kearney, NE 88848-1388

| 9. DISCOUNT FOR PROMPT PAYMENT | |
|---|---|
| 10 days | % |
| 20 days | % |
| 30 days | % |
| days | % |

| CODE  1 | | FACILITY CODE | | 10. SUBMIT INVOICES (4 Copies unless other - wise specified) To THE ADDRESS SHOWN IN: | ITEM 12 |
|---|---|---|---|---|---|

| 11. SHIP TO/MARK FOR | CODE | | 12. PAYMENT WILL BE MADE BY | CODE | BC620 |
|---|---|---|---|---|---|

BLM NEVADA STATE OFFICE
1340 FINANCIAL BLVD
PO BOX 12000

RENO, NV 89520-0006

BLM NATIONAL BUSINESS CENTER
FIELD TRAINING & PAYMENTS GROUP (BC620)
BLDG 50, DFC, PO BOX 25047

DENVER, CO 80225-0047

| 13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION: | 14. ACCOUNTING AND APPROPRIATION DATA |
|---|---|
| [ ] 10 U.S.C. 2304(c) (  )    [ ] 41 U.S.C. 253(c) (  ) | 2000 - - WO260 - - 261A - - 1080HI - - - - - - - - - |

| 15A. ITEM NO. | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | **SEE LINE ITEM DETAIL** | | | | |

| | 15G. TOTAL AMOUNT OF CONTRACT | 120,000.01 |
|---|---|---|

## 16. TABLE OF CONTENTS

| ( ) | SEC | DESCRIPTION | PAGE(S) | ( ) | SEC | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | **PART I - THE SCHEDULE** | | | | **PART II - CONTRACT CLAUSES** | |
| X | A | SOLICITATION CONTRACT FORM | A-1 | X | I | CONTRACT CLAUSES | I-1 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | B-1 | | | **PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH.** | |
| X | C | DESCRIPTION/SPECS/WORK STATEMENT | C-1 | J | | LIST OF ATTACHMENTS | |
| | D | PACKAGING AND MARKING | | | | **PART IV - REPRESENTATIONS AND INSTRUCTIONS** | |
| X | E | INSPECTION AND ACCEPTANCE | E-1 | K | | REPRESENTATIONS, CERTIFICATIONS, AND OTHER STATEMENTS OF OFFERORS | |
| X | F | DELIVERIES AND PERFORMANCE | F-1 | | | | |
| X | G | CONTRACT ADMINISTRATION DATA | G-1 | L | | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | H-1 | M | | EVALUATION FACTORS FOR AWARD | |

### CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE

| 17. [ ] CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return _____ copies to issuing office) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as attached or incorporated by reference herein. (Attachments are listed herein.) | 18. [✓] AWARD    (Contractor is not required to sign this document.) Your offer on Solicitation Number _____ including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary. |
|---|---|

| 19A. NAME AND TITLE OF SIGNER    (Type or print) | 20A. NAME OF CONTRACTING OFFICER LaVonna Hughes |
|---|---|
| 19B. NAME OF CONTRACTOR    By ____ (Signature of person authorized to sign) | 19C. DATE SIGNED | 20B. UNITED STATES OF AMERICA By ____ (Signature of Contracting Officer) | 20C. DATE SIGNED 09/29/2000 |

NSN 7540 - 01 - 152 - 8066
PREVIOUS EDITION UNUSABLE

STANDARD FORM 26 (REV 4 - 85)
Prescribed by GSA
FAR (48 CFR) 53.214(a)



(3)  Minerals necessary to maintain the horses in good condition and that are deficient in the available forage in the pasture shall be provided to all horses in each pasture either as a supplement or added to the salt.

h.  Deaths and Disposal of Remains

Deceased horses shall be identified by freeze number, physical description, and disposed of in accordance with State and/or local sanitation laws. Rendering plants may be used for carcass disposal provided no compensation is received by any agency or individual disposing of the remains. The contractor shall notify the COR immediately if the death of a horse is suspicious and it appears that a postmortem examination should be performed by a veterinarian.. The COR shall hire a veterinarian and make the arrangements for this procedure.

I.  Observation of Horses

The wild horses shall be observed by the contractor a minimum of one time per week, and more frequently when conditions warrant, i.e. during flooding, tornados and fire season, to ascertain their safety and well being and assure that fences are properly maintained. Except in emergency situations, observations shall be carried out on foot, from a vehicle, or horseback. In unusual situations, such as deep snow, etc., which make ground transportation impractical, aircraft may be used, with the approval of the COR. Records that document as a minimum the date of the observation, condition of the horses, problems and concerns, and the name(s)  of individuals) making the observation shall be maintained. Any problems or concerns shall be reported to the COR within 24 hours.

j.  Access

Access to the unloading and loading chute shall accommodate both sedans and semi-trucks. Access shall be available during inclement weather.

k.  Observation by the Public

(1)  The site is not intended to be a public viewing area. Therefore, the contractor will prohibit access onto the private land by the general public.

(2)  The contractor shall notify the COR within 24 hours of any request from humane organizations or wild horse interest groups, to observe the horses.  All such organizations and groups shall be allowed to tour the site only under the approval and guidance of the COR.

l.  Records

An inventory shall be kept at the site which identifies all horses delivered to the site.  A record shall be kept on the location (pasture) each horse occupies. Each horse will be identified with a four digit freeze number on the hip, along with an angle freeze mark on the left side of the neck. Horses that die shall be identified as soon as possible and noted on the inventory. Probable cause of death shall also be noted. A copy of the records will be submitted monthly with the invoice.  (See section F for listing of all deliverables.)

# Exhibit 104

Page 368 of Records Released April 6, 2016

**ATTACHMENT 11**

## Long term and Short term holding contractors

Lavergne, Danny <dlavergne@blm.gov> Thu, Dec 19, 2013 at 9:36 AM
To: Rachelle Burton <twandrburton@yahoo.com>, Terry Riddle <triddlecuttinghorses@gmail.com>, Doris Row
<trvltime@brightok.net>, teamsteinhoff@hotmail.com, hughescattle@sbcglobal.net, spurlivestock@gwtc.net,
kdrice1952@gmail.com, sam@thebufordgroup.com, beckyt65@hughes.net, mustang@wheatstate.com, Jason
Jacobs <t4jacobs@hotmail.com>, Russ Briggs <Russ@zenithdrilling.com>, Ford Drummond <ford@drummondcattle.com>, Stan Dub <ringnecks@wildblue.net>, ron@reedranch.com, "Melvin L. REED"
<melvin@reedranch.com>, ldrummond@drummondranch.com, Robert Hughes <cowbrute@aol.com>,
crichards@iowatelecom.net, Cross Bell - Dan Wells <wellsdan50@yahoo.com>, Grand Eagle - Walter Wakefield
<walterwakefield@msn.com>, Nannette D <nannette.despain@hotmail.com>, t_jennings@rocketmail.com, Broken
Arrow <Baarusa@aol.com>, Dale Wells <dwells@fedbiz-si.com>
Cc: Eric Pagal <epagal@blm.gov>, Lili Thomas <lthomas@blm.gov>
**Effective Immediately, all invoices, correspondence and communications for your contracts shall be directed to the Contracting Officer, Eric Pagal located in the Washington DC area. Eric can be reached at (202) 912-7073**
**If you are a Contractor who routinely emails or mails your invoices in and are not subject to IPP invoicing provisions, please email or mail them to Eric Pagal. Mr. Pagal can provide you the correct invoice mailing address.**
Thank You.
--

*Danny J. Lavergne*
Contracting Officer
Team Lead, Infrastructure Group
DFC, Bldg. 50
P.O. Box 25047
Denver, Colorado 80225
*In the republic of mediocrity, genius is dangerous.*
Work hours
Week 1- Mon-Thur 6:00 to 4:30PM
Week 2 -Tue-Fri 6:00 to 4:30PM
GO BRONCOS!!!
Phone (303) 236-9450
Fax (720) 294-1096
dlavergne@blm.gov
You can visit the NOC ACQUISITIONS SITE for guidelines, samples, contracts and contact information
at: http://teamspace/sites-oc/acq/Shared%20Documents/Forms/AllItems.aspx
Glance at your acquisitions team at this link
https://blmspace.blm.doi.net/oc/sites/nocacq/Pages/HomePage.aspx

# Exhibit 105

Page 338 of Records Released April 6, 2016

Current Status of Long Term Pasture Contracts

Prepared by Lili Thomas

Background:

Long term pasture (LTP) contracts used by the Wild Horse and Burro (WH&B) Program for long term holding are considered fixed price service contracts. Early in 2013 the program was informed that we would need to start funding this type of contract for the full option period. This means full funding each option period, which was a one year option on a five year contract. Due to the budget cycle and the fact that that the option periods for the majority of LTP contracts end on September 30 and start again on October 1, it was not feasible for the program to fully fund the amount of funding that was due at the end of September 2013 to accommodate the new option period (one year) that would start October 1.

Several conference calls were held in the spring of 2013 between Danny Lavergne (Contracting Officer who is with the NOC) Zach Reichold (Senior Wild Horse and Burro Specialist in Washington), Holle Hooks (Wild Horse and Burro Budget in Washington) and Lili Thomas (Contracting Officer's Representative, Wild Horse and Burro Specialist, Reno, NV). These calls were to try to work out how the program could accommodate the legal requirements under the Anti-Deficiency Act. Zach was working with Eric Pagal (Branch Chief, Acquisition and Financial Assistance in Washington) on this issue. (See attachments 1, 2, &3)

During the summer both the NOC and the Washington solicitors were (b)(5) attorney-client privilege

Around August of 2013 Danny Lavergne worked out a plan that would allow the program to budget a smaller amount, changing the option period from one year to either 6 or 3 months and also change when those periods would start. The WH&B Program would not take any of the option out-years for several of the contracts, but would extend each one for the maximum of 6 months and then release a new solicitation that would include a 6 or 3 month option period in the new contract. (See attachment 6, & 7). This would allow the Program to fully fund each option period, without the need to come up with the funding for an entire year in one obligation. In August 2013, Danny Lavergne proceeded with a letter to the contractors on this and then with modifications to the contracts. At the time when I heard about this approach I developed an alternative paper with funding needs for a different approach and presented this to Holle Hooks and Zach Reichold (See attachment 8). From our discussion of the alternative paper it was determined that having a six month option period with some of the contracts starting in January and the second option period starting in July; with the other contracts starting in February and the second option period starting in August would benefit the BLM with budgeting. Using this approach, the program could avoid having to fund new contracts during the September shut down and the Program would only have to come up with 6 months of funding with each contract period offset by a month.