DEBBIE COFFEY,

Plaintiff,

v.

BUREAU OF LAND MANAGEMENT,

Defendant.

Civil Action No. 16-508 (JEB)

## MEMORANDUM OPINION

Plaintiff Debbie Coffey knows a great deal about wild horses and burros – and how those animals are treated by the federal Bureau of Land Management – but she wants to learn more. She accordingly submitted a Freedom of Information Act request to the Bureau in order to obtain certain communications between its officials and private-citizen participants in BLM's Wild Horse and Burro Program. In response, the Bureau charged Coffey $1,680 in processing fees and, after some delay, sent her several pages that were responsive to the request. Roughly a year and a half after accepting payment, BLM refunded the processing fees to Coffey for its failure to meet FOIA's statutory response deadline.

Unhappy with the Bureau's actions on several levels, Plaintiff filed this FOIA suit under 5 U.S.C. § 552(a)(4)(B), and both sides have now cross-moved for summary judgment. The Court agrees with BLM's position that Coffey cannot recover interest in addition to the now-refunded processing fees. It disagrees, however, that the Bureau conducted an adequate search. The Court thus disposes of the parties' Motions accordingly.

# I.     Background

The Bureau of Land Management is charged with protecting and managing populations of wild horses and burros (*i.e.*, wild donkeys) on public lands pursuant to the 1971 Wild Free-Roaming Horses and Burros Act of 1971, 16 U.S.C. §§ 1331-1340.  As part of BLM's efforts to sustain those populations at a level that will "achieve and maintain a thriving natural ecological balance on the public lands," id. § 1333, it enters into long-term holding contracts with private landowners.  Under these contracts (which are also referred to as long-term pasture contracts), the landowners agree to accommodate excess horses and burros from public lands on their private property in exchange for payment.  See U.S. Gov't Accountability Off., GAO-09-77, Bureau of Land Management: Effective Long-Term Options Needed to Manage Unadoptable Wild Horses 3-4, 51-52 (2008); ECF No. 15-1, Exh. 105; see also In Defense of Animals v. U.S. Dep't of Interior, 909 F. Supp. 2d 1178, 1193-94 (E.D. Cal. 2012) (describing BLM's roundup of excess horses on public lands and subsequent transfer of horses to private long-term holding facilities).

Plaintiff is committed to "act[ing] decisively and swiftly when the welfare of . . . Wild Horses and Burros [is] threatened," ECF No. 15-1 (Declaration of Debbie Coffey), ¶¶ 2-3, and she has concerns about the conditions at facilities established pursuant to the holding contracts. Id., Exh. 101 (FOIA Request) at 3 (expressing interest in "operations and activities of long term holding facilities and the care of the wild horses and burros").  To that end, Coffey has scoured BLM's Wild Horse and Burro Program website and other public sources of information for details concerning the government's oversight and management of long-term holding facilities. See Request at 3-4.  Her efforts, however, have come up short, giving rise to the FOIA request at issue here.

A.  The Request

That request, which Plaintiff sent to the Bureau via email on April 29, 2015, sought records of communications between long-term holding contractors and two BLM employees: Lili Thomas, a Contracting Officer's Representative (COR), and Beatrice Wade, a Wild Horse and Burro Program Specialist.  See Request at 1; Coffey Decl., ¶ 10.  Coffey named Wade and Thomas in particular because she had learned, through her previous FOIA requests, that they had both "[been] involved" with long-term holding contractors.  See Coffey Decl., ¶ 11.

Plaintiff stated her specific request for records in two paragraphs.  In the first, she requested "all segregable portions of all e-mails, faxes, and letters" between Thomas and "the long term holding contractors and [their] managers/key personnel," dating from January 1, 2007, to the date of Thomas's retirement from the Bureau.  See Request at 1.  In the second, Coffey requested "all segregable portions of all e-mails, faxes, and letters" between Wade and "the long term holding contractors and [their] managers/key personnel," dating from January 1, 2007, up until the date "th[ose] records [we]re gathered to be sent" to her.  Id.  In each paragraph, moreover, Coffey "exclud[ed] invoices" from the scope of her request.  Id.  Plaintiff's request additionally sought "notes [of] telephone calls" from Thomas and Wade to the long-term holding contractors and their "managers/key personnel," but not the other way around.  Id.

After thus stating her request, Coffey provided several pages of background information "[t]o help [the Bureau]" in conducting its search.  Id.  As relevant here, she first informed BLM that "the contracts for each individual long term holding contain the contractor's name."  Id.  Coffey next explained that the names of the "managers/key personnel" could be found within BLM's Environmental Assessment prepared for each long-term holding facility.  Id.  Finally, her request listed the locations of the twenty-four "current" long-term holding facilities in city-state

format.  Id. at 2.  (For facilities co-located in the same city – *e.g.*, "Gray Horse East, OK" and "Gray Horse West, OK" – the format includes a cardinal direction.)  Coffey's list also supplied a five-digit-alphanumeric identifier, presumably assigned to each facility by BLM, for all but two of the twenty-four locations.  Id.

Aside from this background information, two other features of the request warrant discussion here.  First, it made clear that Coffey was seeking only records of communications between "government employee[s] and private contractors," and not any "interagency or intraagency" documents.  Id. at 1-2.  In addition, Plaintiff's request sought a waiver of processing fees on the grounds that disclosure of the requested records would be likely to contribute significantly to public understanding of the government's operations and activities and would not be in her commercial interest.  Id. at 2-3; see 5 U.S.C. § 552(a)(4)(A)(iii) (requiring reduction or waiver of processing fees for FOIA requests meeting these requirements).

B.  The Bureau's Response

The Bureau emailed to acknowledge receipt of Plaintiff's request on May 26, 2015.  See ECF No. 13-1 (Declaration of Ryan Witt), ¶ 9.  In a letter attached to its email, BLM stated that it had denied Coffey's request for a waiver of processing fees because she had "fail[ed] to articulate" how its disclosure of the requested records to her would contribute to public understanding of the federal government.  Id., Exh. B (Letter from Theresa Coleman) at 3 ("Specifically, your [plan to distribute the disclosed information] does not identify how you will convey the information to a reasonably broad audience of persons interested in the subject.").  Defendant also told Coffey that the estimated cost of processing her request was $1,680.  Id.  Coffey, undeterred, sent BLM a check for that amount on June 1, 2015.  See Coffey Decl., ¶ 15.  The Bureau deposited the check about three weeks later.  Id., ¶ 16.

On November 10, as BLM had yet to provide her with any responsive documents or render a final determination concerning the request, Coffey asked the Bureau to refund her fee payment. Id., ¶ 21; see 5 U.S.C. § 552(a)(4)(A)(viii)(I) (prohibiting agencies that breach FOIA's response deadline from charging search and duplication fees to qualifying requesters). After several more months without a substantive response from BLM (either to the original request from April 2015 or the subsequent refund request), Plaintiff brought this action on March 17, 2016. See ECF No. 1 (Complaint).

On April 6, 2016 – three weeks after Coffey filed suit and nearly nine months after she paid the processing fees – BLM sent Plaintiff another letter informing her of its final determination concerning her request. See ECF No. 13-1, Exh. C (Letter from Cynthia Moses-Nedd) at 1. The Bureau said it had decided to provide Coffey 514 pages (which it attached to the letter) in response to her request. Of those pages, 86 were redacted in part and 95 were redacted in full (though still apparently produced) pursuant to certain FOIA exemptions. Id. (While there may have been some miscounting of those pages, see Witt Decl., ¶ 23 n.1, the exact numbers are irrelevant to the merits of the Motions.)

Despite its voluminous production, only three pages in the Bureau's April 2016 document release were responsive to Coffey's request. See Pl. Mot. at 10. Those pages, which BLM released in full, consist of an email chain that includes a communication between Thomas and a long-term holding contractor. Id. Defendant points to several other documents from the April 2016 release, which collectively encompass five additional pages, and maintains that they are also responsive. See Witt Decl., ¶ 22. Only two of these documents are included in the record, see ECF No. 15-1, Exhs. 103-04, and, as best as the Court can tell, they do not fall within the scope of Coffey's request. In any event, Defendant does not dispute that nearly all of the

pages released to Coffey were non-responsive.

The reason this release included mostly non-responsive documents was a processing error by the Bureau's FOIA Office.  See Witt Decl., ¶¶ 18-21.  Specifically, an errant employee in that office processed the aforementioned 514 pages without taking into account the request's exclusion of "inter- or intra-agency" communications.  Id., ¶ 18.  That employee, moreover, mistakenly sent Coffey two documents that were neither "to or from Lili Thomas or Bea Wade" nor "communications with contractors," id., ¶ 26, and were thus plainly non-responsive.  These errors went undetected until shortly after Coffey brought suit, at which point the Bureau prepared a Vaughn Index indicating the non-responsive character of the majority of the documents from the April 2016 release.  See ECF No. 13-1, Exh. D (Vaughn Index).  The Index also lists the FOIA exemptions BLM relied on in redacting the non-responsive documents it mistakenly released to Coffey.  Id.  Plaintiff does not challenge the applicability of those exemptions or any other aspect of the Vaughn Index, as the only responsive documents she received were unredacted.

One last comment on the Bureau's response: After Coffey brought suit, BLM decided to refund the $1,680 she had paid in processing fees because of its "delay in processing [her] request, as well as the over-processing of records that took place."  Witt Decl., ¶ 24.  After some wrangling between the parties about where to send the refund, Defendant ultimately deposited that amount into an account belonging to Plaintiff's counsel on January 13, 2017.  See ECF No. 18-1 (Supplemental Declaration of Ryan Witt), ¶ 7.  As alluded to previously, the Bureau's refund did not include interest.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (quotation omitted).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of

other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III.    Analysis

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (quoting Rose v. Dep't of Air Force, 495 F.2d 261, 263 (2d Cir. 1974)). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978)). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. Id. § 552(a)(4)(B); Reporters Comm., 489 U.S. at 755. "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of

disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002)

(quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

In seeking summary judgment here, both parties agree that only two issues require

adjudication. The Court first disposes of Coffey's claim to interest in addition to her refunded

processing fees. It then turns to her several objections concerning the adequacy of BLM's

search.

A. Interest on Refunded Processing Fees

Plaintiff first maintains that BLM is in violation of FOIA on account of its "fail[ure] to

return [her] processing fees with interest." Pl. Mot. at 7 (emphasis added); see also ECF No. 20-

4 (Declaration of C. Peter Sorenson), ¶ 5 ("For the 592 days [Coffey] was deprived of her funds,

she [is] owed $6.81 [in interest].").  In support of this contention, she relies primarily on Stein v.

U.S. Dep't of Justice, 197 F. Supp. 3d 115 (D.D.C. 2016), which held that the FBI had breached

FOIA's statutory response deadline and, in the particular circumstances there, had largely

conceded that it was obliged to refund $72.50 in processing fees it had previously charged to the

plaintiff. Id. at 123. Although the Stein court also ordered the FBI to return those fees "with

interest," id. at 124, it did so summarily without any discussion of the plaintiff's entitlement to

interest under FOIA, and that issue apparently was never contested by the parties. Id. (noting

FBI "ignored" plaintiff's argument that it was prohibited from charging processing fees under 5

U.S.C. § 552(a)(4)(A)(viii)). Plaintiff cites no other FOIA decision that ordered a federal agency

to refund interest in addition to processing fees, and the Court is aware of none.

In addition, Defendant correctly points out that FOIA does not expressly waive the

government's sovereign immunity with respect to interest. See Def. Opp. at 3. An award of

interest here would thus violate the longstanding "no-interest rule," which "bars recovery of

9

interest against the government 'unless the award of interest [is] affirmatively and separately contemplated by Congress.'" <u>Trout v. Sec'y of the Navy</u>, 317 F.3d 286, 290 (D.C. Cir. 2003) (quoting <u>Library of Congress v. Shaw</u>, 478 U.S. 310 (1986)).  Although Coffey's concerns about the length of time that BLM retained her processing fees are understandable, <u>see</u> Coffey Decl., ¶¶ 19-22, the Court concludes that the no-interest rule forecloses her argument here.  It consequently holds that Coffey, having been repaid in full by Defendant, cannot recover additional reimbursement in the form of $6.81 in interest.

  B.  <u>Adequacy of Search</u>

  The Court next turns to Plaintiff's search-adequacy argument.  To remind the reader, BLM's April 2016 document release included only a few pages that were responsive to Coffey's FOIA request.  The release also included hundreds of non-responsive pages because of the Bureau's processing error.  <u>See</u> Section I.B, *supra*.  Plaintiff does not challenge that error, as the deficient processing ultimately resulted in her receiving numerous WHBO documents that were outside the scope of her request.  Instead, Coffey contends that the Bureau possesses other responsive records beyond the three pages in the April 2016 release, and that the reason she has yet to receive them is because Defendant did not conduct an adequate search.  <u>See</u> Pl. Mot. at 8-10; Pl. Reply at 1.

  The Court first discusses the legal standards governing the issue and sets forth Defendant's explanation for how it searched its files upon receiving Coffey's request.  It then addresses Plaintiff's objection concerning BLM's choice of search terms, and, finding it valid, denies summary judgment for the government on that basis.  Finally, the Court disposes of several other objections Coffey raises that are not so meritorious.

1. *Standard*

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of a search, moreover, is "generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) (emphases added).

The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Weisberg, 745 F.2d at 1485. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). The affidavits or declarations should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Without contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. Id. On the other hand, if "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

2. *Explanation of Search*

To establish the sufficiency of its search here, Defendant submitted two Declarations from Ryan Witt, a BLM employee who has served as the Bureau's FOIA Officer since October 2013. See Witt Decl., ¶ 1; Suppl. Witt Decl., ¶ 1. According to Witt, after the Bureau received Coffey's request, he determined that "all records likely to be responsive to [the] request would be found in the files of [Wade and Thomas]" within BLM's Wild Horse and Burro Office (WHBO). See Witt Decl., ¶ 11. Witt thus "directed [Plaintiff's] request" to another BLM employee, Sara Bohl, "who handled FOIA requests for . . . WHBO." Id.

Under Bohl's oversight, WHBO searched the "paper and electronic files" of Wade and Thomas, see Witt Decl., ¶¶ 12-14, including their email accounts. See Suppl. Witt. Decl., ¶ 5. The search terms WHBO used were "long term holding contract," "contractor," "contractors," "contract," "Contracting Officer's Representative," "COR," and the "[locations] of all WHBO long-term holding facilit[ies]" as listed in Plaintiff's request. See Witt Decl., ¶¶ 12-14; see also Request at 2. Witt explains that "[Defendant] chose [these] broad, inclusive search terms in order to produce any and all documents potentially responsive to [Coffey's] request" before it conducted the "next stage of review [on those documents] for actual responsiveness." Suppl. Witt. Decl., ¶ 4 (emphasis added). (As detailed above, that second stage of review unfortunately went off the rails.)

The timeframe of WHBO's search did not align completely with the dates Plaintiff included in her FOIA request, but for good reason. The request sought Thomas's communications between January 1, 2007, and the date of her retirement, which Coffey said was "around [January] 2015." Witt Decl., ¶ 13 (citing Request at 1). In fact, the search WHBO conducted was from January 1, 2007, until the end of January 2014, since that was when Thomas

actually retired.  Id.  For its search of Wade's files, WHBO used a date range of January 1, 2007, to September 8, 2015, the "end date of [its] search."  Witt Decl., ¶¶ 14-15.  Although Coffey sought Wade's communications "from . . . January 1, 2007[,] up until the date . . . records [were] gathered to be sent to her," Request at 1, the date range of WHBO's search was proper under Interior Department regulations, which only obliged BLM to search "records in its possession and control on the date that it beg[an] [its] search."  Witt Decl., ¶¶ 14-15 (citing 43 C.F.R. § 2.12(b)).

As mentioned previously, WHBO's search turned up 514 pages of documents, only three of which were responsive, and all of which were sent to Plaintiff in April 2016 (with some non-responsive pages redacted in part or in full).  See Section I.B, *supra*.  Witt explains that WHBO's search did not uncover more responsive documents because "it was uncommon for there to be written communications between [the] private contractors for long-term-holding facilities" and Wade and Thomas.  See Witt Decl., ¶ 16.  He also notes that those communications "were routinely by telephone or in person, and would most often have taken place during [in-person] tours of the facilities."  Id.  In addition, Witt states that "it would be rare" for telephone conversations between the long-term holding contractors and Wade and Thomas to be memorialized in writing.  Id.

In sum, BLM maintains that its personnel conducted a "reasonably" thorough search, see Def. Opp. at 7, and that its search efforts were "properly documented" in Witt's Declarations. See Def. Mot. at 9.  The Bureau also points out that those Declarations fulfill the "magic words" requirement from Oglesby – namely, that Defendant declare that it has "searched all locations likely to contain responsive documents."  Bartko v. DOJ, 167 F. Supp. 3d 55, 64 (D.D.C. 2016) (citing Oglesby, 920 F.2d at 68); see Def. Mot. at 8-9; Witt Decl., ¶ 12; Suppl. Witt. Decl., ¶ 4

("We have searched every location and all files, paper and electronic, likely to contain responsive documents.").

### 3. *Plaintiff's Objections*

Plaintiff nonetheless takes issue with these assertions and highlights a number of purported flaws in Defendant's approach that allegedly render it inadequate under FOIA. Only one of these objections hits its mark: Coffey's challenge to BLM's choice of search terms.

### a. Improper Search Terms

A federal agency has "discretion [to] craft[] a list of search terms that [it] believe[s] [is] reasonably tailored to uncover documents responsive to the FOIA request." Agility Public Warehousing Co. v. NSA, 113 F. Supp. 3d 313, 339 (D.D.C. 2015) (citing Physicians for Human Rights v. U.S. Dep't of Def., 675 F. Supp. 2d 149, 164 (D.D.C. 2009)). That discretion, however, is not boundless; the search terms selected must pass muster under "a standard of reasonableness." Physicians, 675 F. Supp. 2d at 164. Although a court should not "second guess" an agency with respect to its choice of reasonable search terms, Liberation Newspaper v. U.S. Dep't of State, 80 F. Supp. 3d 137, 146 (D.D.C. 2015), it must nonetheless confirm that the agency's choice was "reasonably calculated to lead to responsive documents." Bigwood v. U.S. Dep't of Def., 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (emphasis added).

Here, the Bureau searched for the following words and phrases: "long term holding contract," "contractor," "contractors," "contract," "Contracting Officer's Representative," and "COR," Def. Mot. at 8, as well as the locations of the 24 long-term holding facilities as they were formatted in Coffey's request. See Witt Decl., ¶ 12 (*e.g.*, "Catoosa, OK"). According to Plaintiff, these search terms were unlikely to uncover responsive records and thus did not

comport with the Bureau's obligation to conduct an adequate search.  See Pl. Reply at 8; Pl. Mot. at 13.

The Court agrees.  First, as Plaintiff points out, the words and phrases BLM searched for are largely related to contracting.  See Pl. Reply at 8.  But Coffey did not limit the scope of her request solely to the Bureau's contracting activities; rather, she sought "all" of Wade's and Thomas's communications with certain individuals at each facility.  See Request at 1 (emphasis added).  These search terms by themselves would thus unreasonably limit the scope of BLM's search to communications regarding a single subject – i.e., contracting – in a manner inconsistent with the request.

In addition, the alternative approach Plaintiff proffers – that is, using search terms based on the names and email addresses of the contractors and "managers/key personnel" at each facility, as well as the names of the facilities – seems eminently reasonable.  See Pl. Mot. at 13; see also Coffey Decl., ¶ 29 (listing "Trentman Ranch," "Drummond Land and Cattle," and "Spur Livestock," among other facility names).  The facilities' and individuals' names would likely be contained in the address block, salutation, or signature line of most written correspondence exchanged between the individuals and BLM.  Using the email addresses as search terms, moreover, would presumably uncover all electronic correspondence responsive to Coffey's request.

Although Plaintiff did not list these search terms in her FOIA request, BLM does not dispute that it was likely to find them in the contract and Environmental Assessment for each facility.  In fact, many of the names and email addresses are contained in the non-responsive documents BLM produced.  See Coffey Decl., Exh. 102-04.  Based on the record before it, the

Court infers that finding these search terms would not impose an undue burden. In addition, Coffey has now included many of them in her Declaration. Id., ¶ 29.

Defendant rejoins that, although it did not search for names or email addresses, it did use the locations of every long-term holding facility. See Def. Opp. at 3; Suppl. Witt. Decl., ¶ 3. There are three problems with such a position. For one, the Bureau's location search terms used the entire city-state format (or, in the case of several facilities, city-cardinal-direction-state format) from the list in Coffey's request. See Witt Decl., ¶ 12 (*e.g.*, "Mt. Ayr, IA," "Atkinson, NE," "Gray Horse East, OK," and "Gray Horse West, OK"). Although the Bureau apparently maintains that it was proper to tailor its search terms to the request in this literal manner, see id.; Def. Mot. at 8, neither its briefing nor Witt's Declaration explains why the location format it used would be likely to turn up responsive records. Absent further explanation, the Court is hard pressed to conclude that location search terms encompassing both city and state – and thus excluding records containing only the city or state of each facility – would be reasonably calculated to accomplish the task.

In addition, it seems unlikely that location keywords, even if differently formatted, would be well-suited to finding records here. Put another way, it is doubtful that the individuals at each facility would continually refer to their own locations while exchanging routine correspondence with BLM over the several-year timespan of Coffey's request. See Pl. Reply at 8.

Finally, Coffey listed the locations in her request solely for the purpose of directing BLM to the Environmental Assessments and contracts for each facility, see Request at 1-2, as she wanted the Bureau to find the names of the contractors and "managers/key personnel" within those documents. Id.; see also Coffey Decl., ¶ 10. In other words, her request plainly seeks

information related to the <u>identity</u> of the individuals affiliated with each facility, as opposed to the facilities' <u>locations</u>.

In sum, although the Court is hesitant to "second guess" BLM's selection of search terms, <u>Liberation Newspaper</u>, 80 F. Supp. 3d at 146, it cannot agree that the Bureau's choice here was reasonable. The Court, accordingly, holds that Defendant must choose a different set of keywords – *e.g.*, the names and email addresses of individuals affiliated with each holding facility – and conduct its search again.

One more point warrants discussion here. Notwithstanding the instructions in Coffey's request, it is not true that the <u>only</u> way for Defendant to conduct an adequate search would be to search for every single name, email address, and facility she now points to. <u>Cf.</u> <u>Bigwood</u>, 132 F. Supp. 3d at 140 ("In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request.") (citing <u>Physicians</u>, 675 F. Supp. 2d at 164). After conducting another search with different terms, BLM might well explain in a renewed motion for summary judgment why its omission of Plaintiff's preferred keywords and inclusion of others was reasonable under the circumstances; perhaps, for example, they are not all as readily available as the Court presently infers. In addition, if Defendant reasonably believes that searching with email addresses would be likely to uncover all responsive correspondence between the individuals and BLM, it would not need to additionally search for the individuals' and facilities' names. At this juncture, however, the Court cannot conclude that a search using <u>neither</u> names nor email addresses, and instead using the facilities' locations and contracting-related terms, is adequate to pass muster under FOIA's standard of reasonableness. <u>See</u> <u>Weisberg</u>, 745 F.2d at 1485.

b. Vagueness of Search Description

Although the Court is denying summary judgment for Defendant on the grounds just explained, it believes that addressing some of Coffey's remaining objections will provide guidance to the parties for their next round of briefing. To that end, it next takes up Plaintiff's contention that the Bureau did not sufficiently describe the manner in which it conducted its search. More specifically, Coffey argues here that Witt's Declarations "give virtually no information on how the search was conducted," Pl. Reply at 5, and that Witt "fail[ed] to provide any useful description whatsoever as to [Defendant's] search methodology." Pl. Mot. at 14; see also Pl. Reply at 5 (characterizing search description as "very vague and conclusory").

The Court cannot concur. Witt's Declarations identify the entity that conducted the search (WHBO, under the oversight of Sara Bohl), as well as what terms and timeframes were used to search which files. Had Defendant used adequate search terms, this would have been more than sufficient for it to meet its summary-judgment burden here – namely, to submit "reasonably detailed, nonconclusory" declarations "in good faith," as opposed to "'[m]eticulous documentation' of the 'details of an epic search for the requested records.'" Stanko v. Fed. Bureau of Prisons, 842 F. Supp. 2d 132, 137 (D.D.C. 2012) (quoting Perry, 684 F.2d at 127). The Court also notes that Coffey's protestations on this point do not point to any "place" or "source" likely containing responsive records that Defendant failed to search, Valencia-Lucena, 180 F.3d at 327-28, which might warrant a more thorough explanation of why the Bureau chose to search only the locations it did.

In addition, requiring a more painstakingly detailed search description here would be incongruous with what Coffey asked for: a discrete set of written communications for the two individuals named in her request. Given the relative simplicity of the FOIA request here, the

amount of detail supplied in Witt's Declarations is sufficient. The Court thus concludes that Plaintiff gains no traction with her objection to the Bureau's description of its search.

### c. Failure to Identify Database and Software

Coffey next maintains that Defendant improperly "failed to identify the database or software" Bohl used to search for electronic records. See Pl. Reply at 8 (also contending that "there was no description of the databases that [Bohl] searched"). The only case she cites in support of this argument is National Security Counselors v. CIA, 849 F. Supp. 2d 6 (D.D.C. 2012). The defendant's declarations there stated that the CIA had searched "a records system [containing] CIA regulations as well as other . . . record systems." Id. at 11 (quotation marks omitted). They did not, however, "detail what search terms were used, who conducted the search, how the search was conducted, or what the 'other' . . . record systems were that were searched." Id.

Here, conversely, Witt's Declarations elaborate that the search of Wade's and Thomas's electronic files "included a search of [their] email." Suppl. Witt. Decl., ¶ 5. They also identify the individual who oversaw the search, as well as the applicable search terms and timeframes. The sole case Plaintiff relies on thus hardly supports her contention that summary judgment is improper unless Defendant identifies the databases and software involved in its search.

Courts in this district, moreover, have declined to require agencies to provide the granularity of detail in their declarations that Plaintiff seeks. See, e.g., Bigwood, 132 F. Supp. 3d at 140-41 (rejecting plaintiff's argument that declaration was inadequate because it did not "describe the in-place operating systems or software that was searched") (quotation marks omitted); see also CREW v. Nat'l Indian Gaming Comm'n, 467 F. Supp. 2d 40, 50 (D.D.C. 2006) ("According to CREW, it is not enough for [an agency] merely to state that it performed

an electronic search for the names of the individuals and entities identified in the FOIA request; [rather,] it must reveal details about the search, including information regarding the actual databases or indices searched and what Boolean operators . . . were used . . . . Contrary to CREW's contentions, FOIA does not demand this degree of detail.") (quotation marks omitted). The Court thus concludes that any "failure [by BLM] to identify" the database and software involved in its search, see Pl. Reply at 8, does not preclude summary judgment in its favor.

### d. Failure to Search for Phone Records

The Court addresses one last objection that is the weakest of the bunch. Coffey maintains that she "specifically requested phone records" in her April 2015 FOIA request and that Defendant never attested that it searched for such records even though such a search was "well within the scope of [that] request." Pl. Reply at 9. She also argues that the Bureau – given its assertion that "Thomas's communications with the Long Term Holding Contractors w[ere] routinely by telephone" – cannot explain the absence of a "search for phone records showing the phone number[s] [of Thomas and Wade]" calling those contractors. Id. (citing Witt. Decl., ¶ 16).

The problem for Coffey is that her FOIA request never mentioned phone records. Rather, it sought "[a]ll segregable portions of . . . notes from telephone calls" from Thomas and Wade to long-term holding contractors and their "managers/key personnel." Request at 1 (emphasis added). Although alert to its duty to construe Coffey's request "liberally," Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995) (citing Truitt, 897 F.2d at 544-45), the Court cannot go so far as to read that request as seeking "phone records" of the type Coffey describes in her contention here. See Pl. Reply at 9. Nothing prevents Plaintiff from seeking Wade's and Thomas's phone records in a subsequent FOIA request, but she plainly cannot stake a claim to those records based on her April 2015 request – at least, not at this late juncture.

## IV.    Conclusion

The Court concludes that Plaintiff cannot recover interest and that BLM's choice of keywords was not consistent with its obligation to conduct an adequate search.  It accordingly grants in part and denies in part both parties' Motions.  A separate Order so stating will issue today.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  April 20, 2017